José B. López, Sucrs., S en C., peticionaria, *v.* Tribunal de Contribuciones de Puerto Rico, demandado.

Núm. 48.—*Sometido:* Mayo 28, 1945. *Resuelto:* Julio 6, 1945.

---

*Rafael* y *Juan E. Soltero Peralta,* abogados de la peticionaria; *Hon. Procurador General Interino Jesús A. González (Julio Suárez Garriga,* como tal Procurador General Interino también, en el alegato) y *Ramón Gandía Biscombe, Procurador General Auxiliar,* abogados del interventor, Tesorero de Puerto Rico, querellado en el pleito principal.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

La peticionaria—sociedad mercantil dedicada al negocio de venta de provisiones al por mayor y al detall—rindió dentro del término legal las declaraciones de ingresos correspondientes a los años 1936, 1937, 1938 y 1939. En junio 28 de 1941, el Tesorero de Puerto Rico le notificó una deficiencia; y habiendo la peticionaria solicitado la reconsideración, el Tesorero la declaró sin lugar.

En su apelación ante el Tribunal de Contribuciones de Puerto Rico, la peticionaria alegó:

1. Que el Tesorero erró al estimar un beneficio neto de un tres por ciento sobre el importe de las ventas, ignorando las partidas reales de egresos, que aparecen en los libros de contabilidad de la contribuyente.

2. Que el Tesorero actuó arbitrariamente al ignorar los libros de contabilidad de la contribuyente y usar un método que solamente está justificado cuando el contribuyente no tiene libros o datos que permitan hacer el cómputo justo de la contribución a pagarse.

Contestó el Tesorero, que para fijar el beneficio neto él tomó como base los beneficios reportados en las planillas de 1934, 1936 y 1937 por el mismo negocio; que los libros que llevaba la sociedad eran incompletos, faltando los libros de inventario, facturas de compras, libros de ventas y comprobantes de gastos; que los libros no se llevaban en debida forma; y que por esas razones el Tesorero tenía derecho a determinar el beneficio en la forma que creyera conveniente.

En diciembre 15 de 1944, el Tribunal de Contribuciones rindió su decisión, declarando sin lugar la querella; y habiendo sido denegada la reconsideración, la peticionaria hizo el pago bajo protesta e instó el presente recurso de *certiorari*. Para sostenerlo, alega que el Tribunal de Contribuciones cometió los siguientes errores: 1, ignoró los libros de contabilidad y la prueba pericial ofrecidos por la contribuyente; 2, aceptó el procedimiento seguido por el Tesorero para la determinación del ingreso tributable; y 3, se negó a requerir al Tesorero para que produjera el informe del investigador, en el cual aparece el procedimiento empleado para determinar el ingreso tributable.

En el récord que tenemos a la vista figura una estipulación suscrita por las partes, en la que éstas convienen someter el caso a la decisión del Tribunal, por los libros presentados en evidencia y por el "memorándum de cotejos esporádicos de los libros", preparado por el perito Alejandro Vázquez, a solicitud del Tribunal.

La primera cuestión a resolver es si el Tribunal de Contribuciones, al dictar su decisión, ignoró o no tomó en consideración los libros de contabilidad y la prueba pericial presentada por la peticionaria.

De la transcripción de la evidencia que tenemos a la vista, aparece que la sociedad apelante presentó la siguiente prueba testifical:

Alejandro Vázquez, contador de la firma José B. López, Sucrs., S. en C., declaró: Que practicó un examen de los libros y del sistema de contabilidad de dicha firma, para los efectos del presente caso; que dicho sistema de contabilidad es adecuado para poder determinar el ingreso neto tributable; que la casa lleva libros de caja, jornal, jornal general, jornal de compras, usando en algunos años el libro de ventas y en otros las facturas como récord de ventas, y mayor general; que la casa llevó esos libros durante los años de 1936 a 1939 inclusive; que practicó la investigación a base de esos libros, teniendo, además, a la vista los auxiliares, mayor de clientes y mayor de acreedores, y los comprobantes demostrativos de la autenticidad de los asientos practicados en los libros; que esos libros y comprobantes fueron suficientes para llevarle a la conclusión de que los libros están llevados con regularidad y que los asientos son correctos; que hizo un cotejo de las planillas rendidas por la firma por los años 1937, 1938 y 1939, pero no pudo hacerlo en cuanto al año de 1936 porque los libros de contabilidad correspondientes a dicho año fueron sometidos a la Junta de Revisión e Igualamiento y allí se extraviaron; que la prueba que se le presentó era, de acuerdo con las normas de contabilidad, suficiente para determinar el ingreso neto; que el Tesorero no estuvo justificado al ignorar y desatender los libros y comprobantes ofrecidos por la contribuyente para la determinación de su ingreso neto durante los tres años; que el Tesorero rechazó toda la evidencia y "entonces utilizó un método muy simple, que fué el de computar un tres (3) por ciento de las ventas brutas, para determinar que ése es el ingreso neto tributable"; que el método empleado por el Tesorero no es correcto, porque aceptó las ventas declaradas en las planillas, pero no así el resto de la evidencia pre-

sentada por la contribuyente, consistente en talonarios de cheques y facturas, los cuales eran suficientes para comprobar correctamente el ingreso; que cuando se hace un "audit" de un negocio, el contable no exige todos los comprobantes, facturas y papeles originales, sino que acepta parte de esos documentos o hace pruebas con ciertos meses para auditar un año, que es lo que se llama "spot check"; que ese fué el método seguido por el declarante; que no se explica por qué el Tesorero aceptó las ventas y rechazó toda la otra prueba; que los libros que examinó fueron los de los años 1937, 1938 y 1939, presentados en evidencia ante el Tribunal de Contribuciones, y encontró que los asientos que aparecen en dichos libros fueron hechos con regularidad y correctamente.

Terminada la declaración del testigo Vázquez, la querellante presentó en evidencia sus libros de contabilidad. El Tribunal ordenó al testigo que hiciera uno o dos de los llamados "spot checks" y que sometiera su informe, para así poder comprobar si los libros contienen datos suficientes para poder determinar el ingreso neto sin recurrir a fórmula alguna.

Rufo Hernández, socio gestor de la firma querellante, declaró: Los libros correspondientes al año 1935–36 fueron enviados a la Junta de Revisión e Igualamiento, para ser examinados en relación con un caso que la sociedad tenía pendiente ante dicha Junta. Cuando terminó el caso mandaron a buscar los libros y no los pudieron encontrar y nunca se los devolvieron. Las planillas correspondientes al año 1936 fueron preparadas con datos tomados de los libros que se extraviaron. Desde 1936, año en que se constituyó la sociedad, se llevó el mismo sistema de contabilidad que en los años subsiguientes. La planilla presentada por ese año correspondía a los asientos y a la realidad, demostrando los ingresos tal como fueron percibidos en ese año.

En adición a la prueba testifical, la sociedad apelante ofreció en evidencia el informe del perito contador Alejandro Vázquez, sobre las pruebas y tanteos hechos por él, por orden del Tribunal, en los libros de contabilidad de la sociedad. Después de exponer siete casos de tanteos específicos, el perito llega a la conclusión de que "todos y cada uno de los libros han sido llevados correctamente y de acuerdo con los principios de contabilidad generalmente aceptados".

El Tesorero no presentó prueba alguna para sostener su alegación de que los libros eran incompletos y no se llevaban en debida forma.

El Tribunal de Contribuciones, después de examinar los libros que le fueron presentados, llegó a la siguiente conclusión:

"Por la prueba presentada ante este tribunal no se puede determinar cuáles fueron los ingresos netos tributables que, en su oportunidad y en las planillas correspondientes, la querellante declarara que hubo, ni tampoco los que realmente hubo."

El Tribunal señala en su opinión las deficiencias que ha encontrado en los libros, haciendo constar expresamente que no existe en ellos nada que se relacione con las transacciones del año 1935–36; "que el año 1938–39 es el único en que no hay carencia de datos o de entradas referentes a los negocios de José B. López, Sucrs., S. en C., en sus libros mayor, diario, de caja y de registro de facturas"; y que para los otros años los libros resultan incompletos.

El error señalado, o sea el de haber ignorado los libros y la prueba pericial, no fué cometido, toda vez que del récord aparece que el Tribunal los tomó en consideración, llegando a la conclusión de que los libros eran incompletos e insuficientes para probar que el ingreso neto declarado en las planillas era correcto.

La segunda cuestión a resolver es si el procedimiento seguido por el Tesorero para determinar el ingreso neto tributable se ajustó a la ley.

La Ley de Contribuciones sobre Ingresos dispone lo siguiente:

"Sección 14(*b*).—El ingreso neto será computado sobre la base del período anual de contabilidad del contribuyente (año económico o año natural, según sea el caso) de acuerdo con el sistema de contabilidad usado regularmente por el contribuyente en sus libros; pero si él no llevare libros de contabilidad, o si el sistema usado no refleja claramente su ingreso, la computación será hecha de acuerdo con el sistema que en opinión del Tesorero refleje claramente el ingreso. Si el período anual de contabilidad del contribuyente es otro que el de año económico según se define en la sección 3, o si el contribuyente no siguiera un período anual de contabilidad o no llevare libros, el ingreso neto será computado a base del año natural."

Veamos ahora cuál fué el sistema usado por el Tesorero para computar el ingreso neto tributable para cada uno de los cuatro años envueltos en este caso.

En su contestación a la querella, alegó el Tesorero que él "no fijó arbitrariamente el estimado de beneficio neto de un 3 por ciento sobre las ventas"; y que "lo hizo después de hacer un estudio de los distintos beneficios netos reportados en las planillas de 1934 *por este mismo negocio,* bajo la firma J. B. López, Inc., y en las planillas de 1936 y 1937".

De la transcripción de la evidencia no aparece que el Tesorero ofreciera evidencia alguna para demostrar que el cómputo había sido hecho de acuerdo con un sistema que en su opinión refleja claramente el ingreso neto tributable. No obstante esa falta de prueba en cuanto al método utilizado para determinar el ingreso neto, el Tribunal de Contribuciones hizo constar en su opinión lo siguiente:

"Debe aclararse que el Tesorero determinó las deficiencias notificadas a la querellante para los años de referencia a base de un 3 por ciento de las ventas efectuadas según las declaraciones de ingreso hechas por José B. López, Sucrs., S. en C."

" * * * * * * *

"Ante los hechos y circunstancias de este caso creemos que el Tesorero no ha procedido arbitrariamente al determinar las contri-

buciones que la parte querellante debe pagar. Véase el caso de *Armour & Co.* v. *Sancho Bonet, Tes.,* 57 D.P.R. 512.''

''El método empleado por el Tesorero en la determinación de las deficiencias de la contribuyente no puede clasificarse, en nuestra opinión, como uno que refleje *claramente* el ingreso neto de la contribuyente. Pero debe tenerse presente que, por bueno que sea cualquier método, el ingreso neto no podrá determinarse *claramente* si no hay datos suficientes para ello. Hay que reconocer al Tesorero cierta discreción y facultad para llegar a conclusiones razonables en casos en que estén implicados cuentas y datos sobre hechos ocurridos, o cosas que debieron existir, en tiempos pasados. En el caso de autos el Tesorero ha aceptado como correctos los ingresos brutos declarados por la contribuyente, y *ha hecho uso de un coeficiente o tipo de interés que, en nuestra opinión, es rígido y mecánico,* pero que tenemos que suponer, en ausencia de prueba en contrario, dentro de las circunstancias de este caso, *es razonable y representa un promedio obtenido o determinado a base de su experiencia en relación con muchos otros casos de parecida índole.''* (Bastardillas nuestras.)

Las conclusiones del Tribunal de Contribuciones en cuanto al método empleado por el Tesorero no están sostenidas por la evidencia y están en pugna con las alegaciones del propio Tesorero. Ya hemos visto que dicho funcionario alegó que él estimó el beneficio neto para cada uno de los cuatro años, en un 3 por ciento sobre las ventas efectuadas durante dichos años, y que lo hizo después de hacer un estudio de los beneficios netos reportados en las planillas del año 1934, *por este mismo negocio* de la peticionaria, y en las planillas de 1936 y 1937. En otras palabras, el Tesorero consideró que si el negocio de la peticionaria había producido beneficios durante el año 1934-35—que no está envuelto en la controversia—y también durante los años 1935-36 y 1936-37, él tenía derecho a fijar arbitrariamente un coeficiente o tipo de interés para aplicarlo a dichos dos años e igualmente a los años 1937-38 y 1938-39, aun cuando el negocio hubiese producido pérdidas durante esos dos últimos años.

El coeficiente o tipo de interés aplicado por el Tesorero es no solamente rígido y mecánico si que también injusto y

arbitrario. Es a todas luces arbitrario e irrazonable presumir que si el negocio de la peticionaria produjo beneficios en 1935, 1936 y 1937, debió indefectiblemente producirlos también en 1938 y 1939. La prueba demostró que los libros de contabilidad correspondientes al año 1935-36 no fueron presentados en evidencia por haberse extraviado en la Junta de Revisión e Igualamiento, presidida por el propio Tesorero. No obstante la ausencia de dichos libros, el Tesorero aceptó como veraces las planillas para el año 1935-36, usando las ventas reportadas como base para imponer la contribución por ese año; y los beneficios, para determinar un tipo contributivo aplicable a todos los años en controversia.

El Tribunal inferior, después de examinar los libros presentados en evidencia, llegó a la conclusión de "que el año 1938-39 es el único en que no hay carencia de datos o de entradas referentes a los negocios de José B. López, Sucrs., S. en C. en sus libros mayor, diario, de caja y de registro de facturas". Empero, el Tesorero prescindió de todos esos datos y entradas; y tomando como base las ventas efectuadas durante ese año, impuso la contribución aplicando el tipo rígido, mecánico y arbitrario de 3 por ciento del montante de dichas ventas.

De todo lo expuesto se deduce que el Tribunal recurrido erró al sostener como sostuvo que el tipo contributivo de 3 por ciento del importe de las ventas, aplicado por el Tesorero, "representa un promedio obtenido o determinado a base de su experiencia en relación con muchos otros casos de parecida índole". Dicha conclusión no está sostenida por prueba alguna y es contraria a la alegación del propio Tesorero, quien admite que el tipo contributivo de 3 por ciento fué fijado tomando como base los beneficios netos producidos en años anteriores por el mismo negocio de la peticionaria.

La representación del Tesorero dedica gran parte de su alegato a la defensa del método de por ciento (*percentage*

*method*), sosteniendo que ése es el método alternativo que debe usarse para la computación del ingreso neto, cuando los libros de contabilidad del contribuyente son incompletos y no reflejan claramente sus ganancias. Convenimos con el Tesorero en que dicho método está reconocido por las autoridades como justo y razonable; y si el Tesorero lo hubiese utilizado en el presente caso, otra sería sin duda alguna nuestra decisión.

De la Obra "Federal Tax Service", Prentice Hall, Tomo I, año 1944, pág. 6015, Sec. 6005, copiamos lo siguiente:

"*Determinación del ingreso neto por el método de porcentaje.* En los casos en que el contribuyente tiene libros de contabilidad u otros records incompletos, por los cuales no se puede determinar el ingreso neto, el Comisionado ha seguido la práctica de aplicar un determinado porcentaje, *correspondiente al de otros negocios similares,* a las ventas o ingreso bruto. Aun cuando la Junta de Apelaciones Contributivas ha aprobado numerosas deficiencias determinadas mediante la aplicación del método de porcentaje y ha desaprobado otras, no ha establecido reglas generales sobre la materia. La actitud de la Junta en cuanto a este particular quedó claramente demostrada por el siguiente extracto de su opinión en *Moses P. Ginzburg,* 14 B.T.A., 324:

'Aun cuando reconocemos las injusticias que pueden resultar de la determinación del ingreso tributable mediante el método de porcentaje, debemos reconocer también el deber que tiene el Comisionado de determinar la contribución adecuada, y, en ausencia de informes que pueda servir de base para la aplicación de un método distinto, debemos aprobar la determinación como ha sido hecha.' " (Bastardillas nuestras).

En el caso de autos, el Tesorero no determinó el ingreso neto para cada uno de los cuatro años, tomando como base el por ciento de beneficios o ingresos netos realizados *por otros negocios similares* durante cada uno de esos mismos cuatro años. No utilizó el método alternativo, justo y razonable, del porcentaje y sí el método rígido, mecánico y arbitrario consistente en utilizar el porcentaje promedio de los beneficios recibidos en los años en que hubo beneficios, para

aplicarlo por igual a todos los años en controversia, aun a aquellos años en los cuales la contribuyente alega haber sufrido pérdidas.

Cuando el Tesorero se ve obligado por las circunstancias del caso a recurrir al método de porcentaje para determinar el ingreso neto del contribuyente, es a éste a quien corresponde probar que el cómputo hecho de acuerdo con dicho método es erróneo. Véase el caso de *Julius Gamm*, 15 B.T. A. 592, confirmado en 39 F. 2d 73. En el presente caso, por las admisiones del Tesorero y las conclusiones del Tribunal inferior, se ve claramente que no fué el "percentage method" el usado para determinar el ingreso neto de la peticionaria.

*Por las razones expuestas opinamos que la decisión recurrida debe ser anulada y el caso devuelto al Tribunal de Contribuciones para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. De Jesús no intervino.